Exhibit A

| | |
|---|---|
| DISTRICT COURT, DOUGLAS COUNTY, STATE OF COLORADO<br>4000 Justice Way, Ste 2009<br>Castle Rock, CO 80109 | DATE FILED: February 3, 2023 3:44 PM<br>FILING ID: 7B1B9487D4887<br>CASE NUMBER: 2023CV30086<br>▲ COURT USE ONLY ▲ |
| Plaintiff: GLEN NICOLETTI, an individual,<br><br>v.<br><br>Defendants: AUTO-OWNERS INSURANCE COMPANY, a Michigan corporation. | Case Number:<br><br>Div: |
| GRIFFITHS LAW PC<br>Duncan Griffiths, #42618<br>Kimberly Newton, #53388<br>10375 Park Meadows Drive, Suite 520<br>Lone Tree, CO  80124<br>(303) 858-8090    Fax (303) 858-8181<br>duncan@griffithslawpc.com<br>knewton@griffithslawpc.com<br>ATTORNEYS FOR PLAINTIFF | |
| **COMPLAINT AND JURY DEMAND** | |

Plaintiff, Glen Nicoletti, by and through undersigned counsel, Griffiths Law PC, hereby submits the following Complaint and Jury Demand and alleges as follows.

### PARTIES, JURISDICTION, & VENUE

1. Plaintiff, Glen Nicoletti, is a resident of Colorado residing at 6448 Spotted Fawn Run, Littleton, CO 80125-9055.

2. Defendant, Auto-Owners Insurance Company, is a Michigan corporation doing business in Colorado, and its registered agent is C T Corporation System located at 7700 East Arapahoe Road, Suite 220, Centennial, CO 80112.

3. The subject real property is Plaintiff's residence located at 6448 Spotted Fawn Run, Littleton, CO 80125-9055.

4. At all times relevant to these proceedings, Defendant was conducting the business of insurance in Colorado by insuring Plaintiff's real property identified above.

5. This Court has personal jurisdiction over Defendant pursuant to C.R.S. § 13−1−124(1) and subject matter jurisdiction over the claims asserted below.

1

6. Venue in Douglas County is proper under C.R.C.P. 98(c) because the contractual and tortious conduct upon which this action is based relate to or occurred in Douglas County.

7. Plaintiff seeks declaratory relief and damages in excess of $100,000; therefore, C.R.C.P. 16 applies.

## GENERAL ALLEGATIONS

8. This action arises out of an unreasonable denial and delay of an insurance claim for a covered hail damage loss that occurred at their residence located at 6448 Spotted Fawn Run, Littleton, CO 80125-9055 during the 2019 policy period.

9. Defendant issued a Homeowners Policy, policy number 47-588-453-04, to Plaintiff with effective dates of April 1, 2019, through April 1, 2020 ("the Policy").

10. Plaintiff tendered a claim to Defendant regarding the loss, claim number 300-0241172-2019 ("the Claim").

11. On or about July 18, 2019, Plaintiff gave notice to Defendant of a claim for hail damage to their home resulting from a hailstorm that occurred on or about July 4, 2019.

12. A dispute subsequently arose between Plaintiff and Defendant regarding the scope of coverage and the amount owed to Plaintiff under the policy.

13. This resulted in several court actions to appoint an umpire. This occurred multiple times because Defendant's original umpire selection had a conflict of interest.

14. After an appropriate umpire was finally selected and appointed, the parties participated in the appraisal process which resulted in a final award by the umpire on May 27, 2022. It was countersigned by the appraiser for the insured on June 10, 2022, at which time it became effective.

15. Defendant offered to pay Plaintiff for the amount owed under the appraisal award that included replacement of 5.95 squares of the 35.92 total roofing tiles on the roof.

16. Defendant wrote Plaintiff a check for the amount of the appraisal award, less the deductible.

17. However, the repair that Defendant proposed, and which was accepted by the appraiser, is impossible to perform because it is prohibited by the Plaintiff's HOA and specifically, the HOA's covenants, conditions, and restrictions.

18. Plaintiff has made at least two separate requests to the HOA asking for a variance to allow him to perform the repair contemplated by the appraisal, even going so far as to explain to the Design Review Committee that the insurance company was unwilling to fund any further repairs. The HOA nevertheless rejected his pleas.

19. The repair is also likely prohibited by the applicable building department having jurisdiction

over the repair work, but Plaintiff cannot know for certain until his contractor applies for a permit, completes the work, and asks the building department for an inspection and sign-off. The building department will not offer an advisory opinion. This poses an unacceptable risk to Plaintiff that he should not have to endure when there are other means to repair the covered damage that Defendant could fund, and which should be covered under the policy anyway.

20. Lastly, Plaintiff has been informed by several roofing experts that the clay tiles contemplated by the Defendant (and the appraisal award) cannot be manufactured in the dimension and style necessary to integrate into the existing roof. This is largely because the existing tiles are no longer available for manufacture.

21. Plaintiff is entitled to a full roof replacement under the language of the insurance policy.

22. Plaintiff has sent several demands to Defendant explaining his position and why he is entitled to additional funds and why Defendant's position contradicts its own insuring agreement.

23. Defendant has refused to reconsider its position and is instead relying on the June 2022 appraisal award. But this award does not contemplate any of the legal coverage issues raised by Plaintiff in this Complaint.

**Coverage under the Policy:**

24. The Policy provides coverage for a full roof replacement under the circumstances.

25. Specifically, the Policy "cover[s] risk of accidental direct physical loss to covered property described under Coverage A - Dwelling and Coverage B - Other Structures except for losses excluded elsewhere in this policy."

26. Plaintiff's roof qualifies as "covered property" within this provision, as the definition includes their "dwelling located at the residence premises including structures attached to that dwelling. This dwelling must be used principally as your private residence."

27. Plaintiff uses his property as a private residence, and the roof is a structure attached to that dwelling, meaning that the Policy provides coverage for the hail damage accordingly.

28. Although the language of the insuring agreement makes clear that this is a covered loss, Defendant has argued that it is not responsible for matching or losses associated with a cosmetic failure.

29. Even if this were true, which Plaintiff disputes, Defendant has ignored Plaintiff's argument that his roofing contractor cannot physically integrate the new tiles into the existing roof.

30. Especially where it is questionable whether Plaintiff can even obtain the same dimension and style of roof tile contemplated by Defendant's repair proposal, Defendant's position is unreasonable.

31. These tiles would have to be custom fabricated, and the repair proposal provided no

assurances that the amount offered would be sufficient to order custom fabricated tiles and install them.

32. It is Plaintiff's understanding that the cost to complete this work would likely exceed the cost to simply replace the roof with new tiles.

33. As for the Policy, Defendant specifically included a color-match exclusion that would have excluded coverage in the policies issued *after* 2019.

34. Given that this exclusion was not included in the operative Policy, the same suggests that Plaintiff is still entitled to such coverage under the Policy.

**Ordinance or Law Endorsement:**

35. Additionally, Plaintiff's insurance policy contained an endorsement for supplemental law and ordinance coverage intended to cover additional costs associated with repairs required by applicable laws or a governing jurisdiction.

36. Here, Plaintiff lives in a home that is part of a covenant-protected community, Roxborough Park Foundation, a homeowner's association regulated by the Colorado Common Interest Ownership Act ("CCIOA").

37. Under CCIOA, Roxborough Park Foundation is legally authorized to make rules and restrictions, including design regulations. *See* C.R.S. §§ 38−33.3−102, 38−33.3−106, *et. seq.*

38. As part of such authority, the HOA formed a Design Review Committee with statutory authority to reject proposed repairs or variance requests that conflict with their covenants and restrictions. Their authority includes the power to enforce their restrictions by levying fines, initiating court action, and obtaining injunctive relief.

39. Plaintiff has tried repeatedly to confer with the Foundation regarding the repairs proposed by Defendant to no avail.

40. The Roxborough Park Foundation Design Review Committee explicitly rejected Plaintiff's proposal to implement Defendant's proposed repairs.

41. In other words, Plaintiff is prohibited from proceeding with Defendant's preferred repair method. This means that if Plaintiff were to proceed with the non-compliant repairs in violation of the covenants, he would be liable for the penalties, and the Foundation could force removal of the new tiles altogether.

42. Plaintiff could also be subject to liability for attorney fees and expenses incurred by the Foundation in enforcing its covenants.

43. In denying Defendant's proposed repairs, the Foundation relied on the following provision: "The style, quality, aesthetic attributes and fire rating of roofing are important to our community because of visibility and safety concerns. The material and color of the roofing

material are subject to DRC approval."

44. Based on these obstacles, the Policy's Ordinance or Law Endorsement required Defendant to cover the difference for a repair that would comply with the Foundation's covenant requirements.

45. This endorsement included in the Policy states that Defendant "will pay up to the limit shown in the Declarations under 'Ordinance Or Law Coverage' for the increased costs necessary to meet any applicable enforcement of ordinance or law: (1) regulating the construction, use or repair; or (2) requiring the demolition, including costs of debris removal for covered property insured under Coverage A - Dwelling or Coverage B - Other Structures which is damaged by a peril we insure against. This includes any undamaged part of the covered property which is necessary to complete the repair or replacement of the damaged covered property."

46. Moreover, the Policy's declarations provide a limit of $86,200 in additional ordinance or law coverage. This amount would be sufficient to complete a repair that complies with the Foundation's requirements.

47. Roxborough Park Foundation statutory exercise of authority to implement express design requirements qualifies for such coverage under this endorsement.

48. In addition, Plaintiff's roofing experts have communicated with Douglas County that has jurisdiction over any roof replacement. Douglas County has not given any indication that it would accept the partial repair and prior experience suggests that they would likely deny the claim should Plaintiff proceed. This poses an undue risk that Plaintiff could incur exorbitant losses by being forced to attempt a repair that could not be approved. The cost to start again and perform a full replacement would be substantially more than just replacing the roof in the first place.

**Defendant's Denial of Claim:**

49. Plaintiff outlined the positions above in detail to Defendant in a letter dated November 14, 2022.

50. Defendant mainly relied on the appraisal award to deny coverage, claiming that the amount of loss reflected in the award is "binding for both parties" even though the appraisal explicitly stated that the values "are subject to insurer and insured resolution."

51. Under the Policy, Plaintiff has a right to rely on the supplemental law and ordinance endorsement for additional coverage based on the Foundation's decision to reject the repairs proposed in the appraisal award.

52. Still, Defendant rejected Plaintiff's coverage analysis, stating that the Foundation's denial "does not appear to apply to the law and ordinance section of the policy" because it "was issued by the Roxborough Park Design Review Committee and would not be considered a local municipality."

53. Despite claiming that the Foundation must qualify as a local municipality, Defendant seemingly did not dispute that CCIOA regulates the construction, use, or repair of Plaintiff's roof under the circumstances by vesting the Foundation with such powers to impose regulations and restrictions enforceable by law. *See* C.R.S. § 38–33.3–123.

54. As a result of Defendant's unreasonable denial and/or delay in providing Plaintiff with the requisite insurance coverage for the repairs, Plaintiff has suffered and is expected to suffer damages in an amount to be determined at trial.

## FIRST CLAIM FOR RELIEF
### (Declaratory Judgment)

55. The previous allegations are incorporated here by reference.

56. The Policy is a contract under which Plaintiff paid Defendant substantial premiums in exchange for Defendant's promise to pay Plaintiff's claims for losses covered by the Policy.

57. Plaintiff has complied with all applicable provisions of the Policy and/or those provisions have been waived by Defendant, but Defendant has breached its obligations toward Plaintiff pursuant to the Policy's terms and endorsements.

58. An actual case or controversy exists regarding Plaintiff's rights and Defendant's obligations under the Policy to provide benefits and coverage for the losses incurred in connection with the claim associated with Plaintiff's property.

59. Pursuant to C.R.C.P. 57, Plaintiff seeks a declaratory judgment from the Court declaring the following:

    a. That Plaintiff's claim for replacement of all the roof tiles is an insured loss under the Policy pursuant to the supplemental law and ordinance endorsement; and

    b. Defendant is obligated to pay Plaintiff for the full amount of the losses it has incurred in connection with the same.

## SECOND CLAIM FOR RELIEF
### (Breach of Contract)

60. The previous allegations are incorporated here by reference.

61. The Policy is a valid and enforceable contract of insurance.

62. In addition, Colorado law recognizes the implied covenant of good faith and fair dealing in all contracts, including the insuring agreement at issue. Defendant is obligated to exercise good faith when adjusting Plaintiff's claim which includes an obligation to timely investigate, promptly respond to Plaintiff's requests, and resolve the claim consistent with the requirements of the insurance policy.

63. Colorado law also recognizes the reasonable expectations of the insured doctrine which provides that consumers, like Plaintiff, are entitled to coverage consistent with the reasonable expectations of an insured.

64. Defendant's acts and omissions as described herein constitute a breach of the Policy, including, but not limited to, its failure to pay benefits owed to Plaintiff under the Policy's supplemental law and ordinance endorsement and/or other provisions.

65. Defendant has further breached the contract by failing to exercise good faith in adjusting the claim and taking a position that is entirely inconsistent with the language of the policy and the reasonable expectations of the insured.

66. As a direct and proximate result of Defendant's breaches of the Policy, Plaintiff has suffered and is expected to suffer damages in an amount to be proven at trial, including, without limitation, the amount of the benefits owed and/or wrongfully withheld under the Policy.

### THIRD CLAIM FOR RELIEF
### (Bad Faith Breach of Insurance Contract)

67. The previous allegations are incorporated here by reference.

68. Under the Policy's implied covenant of good faith and fair dealing, Defendant covenanted that it would deal with Plaintiff fairly and honestly, and do nothing to impair, hinder, or injure Plaintiff's rights to benefits under the Policy.

69. Through the acts and omissions described above, Defendant breached that covenant.

70. Defendant's conduct fell below the applicable common law and industry standards of care, violated the duties of good faith and fair dealing, and constituted the tort of bad faith breach of insurance contract.

71. Defendant's acts and omissions were unreasonable, and Defendant knew and/or acted with reckless disregard for Plaintiff's rights and interests.

72. Defendant's acts and omissions were committed in disregard of Plaintiff's reasonable expectations as an insured under the Policy.

73. Defendant breached its duty of good faith and fair dealing, among other obligations, by engaging in the following unreasonable acts:

    a. Depriving Plaintiff of the benefits and protections afforded under the Policy;

    b. Placing its own interests above those of Plaintiff;

    c. Failing to timely pay benefits owed under the Policy;

    d. Misrepresenting facts concerning the Policy's coverage;

  e. Failing to conduct a reasonable and impartial investigation of the loss based upon all available information;

  f. Forcing Plaintiff to pursue various actions, including bringing this lawsuit, to recover benefits owed and protections guaranteed under the Policy;

  g. Violating the Unfair Claims—Deceptive Practices Act ("UCDPA"); and

  h. Other conduct to be discovered throughout these proceedings.

74. As a direct and proximate result of Defendant's bad faith breach of the Policy, Plaintiff has suffered damages in an amount to be proven at trial.

## FOURTH CLAIM FOR RELIEF
### (Violation of C.R.S. § 10–3–1115 and Relief Under § 10–3–1116)

75. The previous allegations are incorporated here by reference.

76. Pursuant to C.R.S. §§ 10–3–1115(1) and (2), Defendant is forbidden from unreasonably delaying or denying payment of a claim for benefits owed to or on behalf of a first-party claimant.

77. Plaintiff is a first-party claimant as defined under C.R.S. § 10–3–1115(1)(A)(I).

78. Defendant is an entity engaged in the business of insurance.

79. Defendant delayed and/or denied payment of first-party benefits owed to Plaintiff and did so without a reasonable basis within the meaning of C.R.S. § 10–3–1115(2) for the reasons set forth above.

80. Under C.R.S. § 10–3–1116, a first-party claimant whose claim has been unreasonably delayed or denied by an insurer, such as Plaintiff, may bring an action to recover reasonable attorneys' fees and court costs and two times the covered benefit that was unreasonably delayed or denied.

81. As described herein, Defendant's acts and omissions violated C.R.S. § 10–3–1115(2).

82. Thus, Plaintiff also brings this claim to recover damages awardable under C.R.S. § 10–3–1116, separate from and in addition to those remedies and damages available under any other applicable claims for relief.

## JURY DEMAND

83. Pursuant to C.R.C.P. 38(b), Plaintiff hereby demands a trial by jury on all issues so triable.

## RELIEF REQUESTED

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against Defendant, and award damages and other relief as follows:

a. For declaratory relief as set forth above;

b. For damages in an amount to be determined at trial on Plaintiff's breach of contract claim;

c. For damages in an amount to be determined at trial on Plaintiff's bad faith breach of insurance contract claim;

d. For damages in an amount to be determined at trial on Plaintiff's claim for statutory violations as described above;

e. For all benefits due under the Policy for covered losses;

f. For other compensatory economic damages in an amount to be proven at trial;

g. For two-times the covered benefit as permitted by C.R.S. § 10–3–1116(1);

h. For reasonable attorneys' fees, costs, and expenses incurred herein;

i. For all pre- and post-judgment interest as permitted by law or contract; and

j. For such other and further relief as the Court deems just and proper.

Respectfully submitted this 3rd day of February 2023.

GRIFFITHS LAW PC

*/s/ Duncan Griffiths*
Duncan Griffiths, #42618
Kimberly Newton, #53388
ATTORNEYS FOR PLAINTIFF

Plaintiff's Address:
6448 Spotted Fawn Run
Littleton, CO 80125-9055

9